UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

HEATHER C.,

                Plaintiff,

           -v-                     5:21-CV-244

COMMISSIONER OF
SOCIAL SECURITY,

                Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

| APPEARANCES: | OF COUNSEL: |
|---|---|
| OLINSKY LAW GROUP | HOWARD D. OLINSKY, ESQ. |
| Attorneys for Plaintiff | |
| 250 South Clinton Street, Suite 210 | |
| Syracuse, NY 13202 | |
| | |
| SOCIAL SECURITY | LISA SMOLLER, ESQ. |
|    ADMINISTRATION | Special Ass't U.S. Attorney |
| Attorneys for Defendant | |
| J.F.K. Federal Building, Room 625 | |
| 15 New Sudbury Street | |
| Boston, MA 02203 | |

DAVID N. HURD
United States District Judge

<u>**MEMORANDUM–DECISION & ORDER**</u>

## I. <u>INTRODUCTION</u>

On March 2, 2021, plaintiff Heather C.[1] ("plaintiff" or "claimant") filed this action seeking review of the final decision of defendant Commissioner of Social Security ("Commissioner" or "defendant") denying her application for Supplemental Security Income ("SSI") under the Social Security Act (the "Act").  The Commissioner has filed a certified copy of the Administrative Record and both parties have briefed the matter in accordance with General Order 18, which provides that an appeal taken from a final decision denying benefits will be treated as if the parties have filed cross-motions for a judgment on the pleadings.  *See* FED. R. CIV. P. 12(c).  Plaintiff's appeal will be considered on the basis of these submissions without oral argument.

## II. <u>BACKGROUND</u>

On April 28, 2015, plaintiff initially applied for SSI alleging that her anxiety, high blood pressure, pinched nerve in her left arm, back pain, neck pain, and knee pain rendered her disabled.  R. at 97–98.[2]  Plaintiff's claim was initially denied on September 14, 2015.  *Id*. at 107.  Thereafter,

---

[1]  In accordance with a May 1, 2018 memorandum issued by the Judicial Conference's Committee on Court Administration and Case Management and adopted as local practice in this District, only claimant's first name and last initial will be mentioned in this opinion.

[2]  Citations to "R." refer to the Administrative Record.  Dkt. No. 11.

Administrative Law Judge ("ALJ") Elizabeth W. Koennecke held two hearings on plaintiff's claim: the first occurred on May 1, 2018, and the second occurred on August 29, 2018. *Id.* at 35–74. The ALJ conducted both hearings from Syracuse, New York. *Id.* Plaintiff, represented by attorney Megan Marie Savaia Ortiz, appeared in person and testified at the first hearing.[3] *Id.* At the second hearing, the ALJ also heard testimony from Vocational Expert Joseph M. Atkinson. *Id.* at 63–74.

On September 10, 2018, ALJ Koennecke issued a written decision denying plaintiff's application for benefits. R. at 15–28. This decision became final on July 8, 2019, when the Appeals Council denied plaintiff's request for review. *Id.* at 1–3. Plaintiff timely appealed this unfavorable determination. *Heather C. v. Comm'r of Soc. Sec.*, 5:19-CV-1111-TWD.

After plaintiff filed her opening brief, the parties stipulated to vacatur of the Commissioner's final decision and a remand for renewed proceedings before a different ALJ. *Heather C.*, 5:19-CV-1111-TWD at Dkt. No. 12. U.S. Magistrate Judge Thérèse Wiley Dancks so-ordered the parties' stipulation on April 9, 2020, *id.* at Dkt. No. 13, and the Appeals Council sent the matter back to a new ALJ for further consideration, R. at 827–829.

---

[3] Claimant appeared by telephone at the second hearing. *See* R. at 15.

On December 11, 2020, ALJ Jeremy Eldred held a new hearing on plaintiff's claim for benefits.  R. at 769–84.  Because of the COVID-19 pandemic, plaintiff consented to proceed by telephone.  *Id*.  Plaintiff, represented by attorney Valerie Didamo, appeared and testified.  *Id*.  The ALJ also heard testimony from Vocational Expert Joseph Young.  *Id*.

On December 29, 2020, the ALJ issued a written decision denying plaintiff's claim for benefits.  R. at 743–754.  Because plaintiff did not file written exceptions with the Appeals Council, the ALJ's written decision became the final decision of the Commissioner on February 28, 2021.  *See id*. at 741.  Plaintiff timely appealed.

## III.  <u>LEGAL STANDARD</u>

The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).

To qualify as disabled within the meaning of this definition, the Act requires that a claimant's:

> physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the

national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A).

The ALJ follows a five-step sequential evaluation process to decide whether a claimant is disabled.  20 C.F.R. § 404.1520.[4]  At step one, the ALJ determines whether the claimant is currently engaged in "substantial gainful activity."  § 404.1520(a)(4)(i).  If so, the claimant is not disabled regardless of his medical condition or other factors.  § 404.1520(b).

If the claimant is not engaged in substantial gainful activity, then step two requires the ALJ to determine whether the claimant has a "severe" impairment or combination of impairments; *i.e.*, a medically determinable condition that "significantly limits" his physical or mental ability to do basic work activities.  § 404.1520(c).

If the claimant suffers from a severe impairment or combination of impairments, then step three requires the ALJ to determine whether the impairment(s) meet or equal an impairment specifically listed in Appendix 1 of the Regulations (the "Listings").  § 404.1520(d).  If the claimant's severe

---

[4]  Section 404.1520 sets forth the five-step evaluation used for DIB claims.  A parallel set of regulations govern SSI applications.  *See* 20 C.F.R. § 416.920(a)(4).

impairment(s) meet or equal one or more of the Listings, then the claimant is presumed to be disabled regardless of any other factors. § 404.1520(a)(4)(iii).

If the claimant is not presumed disabled under one or more of the Listings, then step four requires the ALJ to assess whether—despite the claimant's severe impairment(s)—he has the residual functional capacity ("RFC") to perform his "past relevant work." § 404.1520(e)–(f). If so, the claimant is not disabled. § 404.1520(a)(4)(iv).

Finally, if the claimant cannot perform his past relevant work, the Commissioner must determine if the claimant's RFC, in combination with his age, education, and work experience, permits the claimant to do any other work in the national economy. § 404.1520(a)(4)(v), (f)–(g).

The burden of proof for the first four steps is on the claimant. *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996). However, if the claimant shows he cannot perform his past relevant work at step four, the burden shifts to the Commissioner for step five. *Id.*

The Act further provides for judicial review of "any final decision . . . made after a hearing" by the Social Security Administration ("SSA" or the "Agency"). 42 U.S.C. § 405(g). However, the scope of this review is limited to determining whether (1) the Commissioner applied the correct legal standard to his analysis and, if so, (2) whether the final decision is supported by

"substantial evidence." *Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013) (per curiam) (cleaned up).

"Substantial evidence means more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (cleaned up).  "If the reviewing court finds substantial evidence to support the Commissioner's final decision, that decision must be upheld, even if substantial evidence supporting the claimant's position also exists." *Morales v. Berryhill*, 484 F. Supp. 3d 130, 140 (S.D.N.Y. 2020) (citation omitted).

However, this "deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003).  Thus, "where there is a reasonable basis for doubting whether the Commissioner applied the appropriate legal standards," the decision should not be affirmed.  *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987).  This is so regardless of whether or not the decision is otherwise supported by "substantial evidence."  *See id*.

## IV.  **DISCUSSION**

The ALJ applied the five-step analysis to find that: (1) plaintiff had not engaged in substantial gainful activity since April 28, 2015, the alleged onset date; (2) plaintiff's degenerative disc disease, stenosis of the cervical spine, and history of corrective surgery for scoliosis of the thoracic and lumbar spine

were "severe" impairments within the meaning of the Regulations; and (3) these impairments, whether considered individually or in combination, did not meet or equal any of the Listings.  R. at 745–748.

At step four, the ALJ determined that plaintiff retained the RFC to perform "light work as defined in 20 CFR 416.967(b), except [that she] can stoop, reach, or crouch no more than occasionally."  R. at 748.  Next, the ALJ determined that plaintiff had no past relevant work.  *Id*. at 752.  However, after considering plaintiff's age, education, and RFC in light of the Vocational Expert's testimony, the ALJ concluded that plaintiff could still perform such representative unskilled jobs as a "gate guard," a "furniture rental sales clerk," or an "usher."  *Id*. at 753.

Because these representative jobs existed in the sufficient numbers in the national economy, the ALJ concluded that plaintiff was not disabled between April 28, 2015, the alleged onset date, and December 29, 2020, the date of his written decision.  R. at 753–54.  Accordingly, the ALJ denied plaintiff's application for benefits.  *Id*. at 754.

## A.  <u>Plaintiff's Appeal</u>

Plaintiff contends the ALJ (1) failed to incorporate any limitations from her mental health condition into the RFC finding; and (2) improperly

assessed an August 17, 2015 medical opinion rendered by Elke Lorensen, M.D., a consultative physical examiner.  Pl.'s Opp'n, Dkt. No. 16 at 7–12.[5]

## 1.  <u>Mental Health Limitations & the RFC</u>

First, plaintiff contends the ALJ failed to include any mental health limitations in the RFC despite the fact that evidence in the record showed she suffers from a "mild" limitation in dealing with others and in dealing with stress and "mild" difficulties in maintaining social functioning.  Pl.'s Mem. at 7.  According to plaintiff, the failure to account for these mental limitations in the RFC finding amounts to a "significant" error because the three representative jobs on which the ALJ relied in finding plaintiff not disabled—a "gate guard," a "furniture rental sales clerk," or an "usher"—all require a particular "temperament"; *i.e.*, an ability to deal with people.[6]  *Id.*

"Where, as here, the ALJ finds at step two that a claimant has one or more 'severe' impairments but determines at step three that the claimant is not presumptively disabled, the ALJ must go on to make an RFC finding, which is an assessment of 'what an individual can still do despite his or her limitations.'"  *Tammy Lynn B. v. Comm'r of Soc. Sec.*, 382 F. Supp. 3d 184, 192 (N.D.N.Y. 2019) (quoting *Cox v. Astrue*, 993 F. Supp. 2d 169, 183

---

[5] Pagination corresponds with CM/ECF.

[6] Temperaments "are the adaptability requirements made on the worker by specific types of jobs."  *Sara A. v. Saul*, 2019 WL 6606861, at *24 (N.D. Ind. Dec. 5, 2019) (citation omitted).

(N.D.N.Y. 2012) (McAvoy, J.)).  "In making a residual functional capacity determination, the ALJ must consider a claimant's physical abilities, mental abilities, [and symptomatology], including pain and other limitations which could interfere with work activities on a regular and continuing basis." *Samantha S. v. Comm'r of Soc. Sec.*, 385 F. Supp. 3d 174, 183 (N.D.N.Y. 2019) (citation omitted).

"The claimant's RFC is determined based on all of the relevant medical and other evidence in the record, including the claimant's credible testimony, objective medical evidence, and medical opinions from treating and consulting sources." *Rivera v. Comm'r of Soc. Sec.*, 368 F. supp. 3d 626, 640 (S.D.N.Y. 2019).  "In practice, administrative law judges rely principally on medical source opinion and subjective testimony when assessing impaired individuals' ability to engage in work-related activities." *Tammy Lynn B.*, 382 F. Supp. 3d at 192–93 (citation omitted).

Upon review, this first argument must be rejected.  The "mild" mental health limitations identified by plaintiff were assessed by Jacqueline Santoro, Ph.D, a consultative psychologist who examined plaintiff on August 17, 2015, and reviewed by S. Juriga, Ph.D, a State agency medical consultant who analyzed the record on September 8, 2015.  R. at 102, 429–32.

"Where, as here, mental impairments are at issue, the Commissioner directs administrative adjudicators to employ a 'psychiatric review technique'

(sometimes referred to as a 'special technique')." *Amanda R. v. Comm'r of Soc. Sec.*, 556 F. Supp. 3d 145, 151 (N.D.N.Y. 2021) (citation omitted). This "special technique" permits ALJs to determine "whether medically[ ] determinable mental impairments are severe (a Step 2 issue) and whether they meet or are equivalent in severity to any presumptively disabling mental disorder (a Step 3 issue)." *Id.*

A review of the record shows that the ALJ analyzed these two medical opinions, first at step two and then again as part of his later RFC finding. At step two, the ALJ correctly noted that plaintiff had been diagnosed with anxiety disorder. R. at 746. However, after applying the "special technique," he concluded that it was not a "severe" impairment within the meaning of the Regulations. *Id.*

In reaching that conclusion, the ALJ relied primarily on the findings from Dr. Santoro's consultative evaluation. *See* R. at 746–47. The ALJ noted that his conclusion was also reinforced by the fact that plaintiff was not involved in any ongoing mental health treatment and that records from her primary care provider showed that her anxiety condition was "under control with medication." *Id.* at 747.

Plaintiff does not directly challenge this step two finding. Instead, she argues that the ALJ should still have incorporated some kind of mental health limitation(s) in his later RFC determination. Of course, "[a] RFC

determination must account for limitations imposed by both severe and nonsevere impairments." *Parker-Grose v. Astrue*, 462 F. App'x 16, 18 (2d Cir. 2012) (summary order).  Importantly, though, a "non-severe" impairment is, by definition, a condition which causes only a "slight abnormality" which would have "no more than a minimal effect on an individual's ability to work." *Samantha S. v. Comm'r of Soc. Sec.*, 385 F. Supp. 3d 174, 187 (N.D.N.Y. 2019) (citation omitted).

In other words, it is hard to argue that the ALJ erred in failing to include limitations related to this mental health condition without first claiming that the underlying condition itself was sufficiently "severe" so as to impose more than a "minimal effect" on plaintiff's ability to work.  That is especially so when the ALJ's written decision shows that he did analyze and account for plaintiff's mental health condition when formulating the RFC.  R. at 750.

For example, in his discussion of the medical evidence, the ALJ reiterated that Dr. Juriga concluded that plaintiff's anxiety was non-severe and that Dr. Santoro had found plaintiff's mental limitations to be "mild" at best.  R. at 750.  The ALJ gave these opinions "significant weight," further noting that plaintiff had not participated in any ongoing mental health treatment and that other evidence showed the "anxiety is well controlled by medication."  *Id*.

In short, the ALJ acted within his discretion to analyze this evidence and ultimately conclude that it did not warrant the imposition of any mental RFC

limitations.  *See Michelle B. v. Comm'r of Soc. Sec.*, 2021 WL 3022036, at *8

(N.D.N.Y. July 16, 2021) (rejecting similar argument where "the ALJ clearly

considered plaintiff's mental impairments as part of his larger RFC

analysis"); *see also Amanda R.*, 556 F. Supp. 3d at 152 ("It is well-established

that the ALJ has both the ability and the responsibility to resolve conflicts in

the evidence.").  As the Commissioner points out in her own brief, plaintiff

has failed to show that adopting Dr. Santoro's mental health findings (or

rejecting Dr. Juriga's opinion about non-severity) would have precluded her

from performing the representative jobs later identified by the ALJ.  *See*

Defs.' Mem., Dkt. No. 17 at 4–5.  Accordingly, this argument will be rejected.

## 2. **Dr. Lorensen**

Second, plaintiff contends that the ALJ improperly assessed the medical

opinion rendered by Dr. Lorensen.  Pl.'s Mem. at 9–12.  In plaintiff's view, the

ALJ failed to sufficiently explain why he did not adopt Dr. Lorensen's finding

that she suffered from "mild restrictions on turning the head."  *Id.* at 9.

Broadly speaking, the Regulations divide evidence from a claimant's

medical sources into three categories: (1) treating; (2) acceptable; and

(3) other.[7]  The most important of these is the treating source category, which

---

[7] On January 18, 2017, the SSA revised the rules regarding the evaluation of medical
evidence.  Because plaintiff's claim was filed before March 27, 2017, the prior Regulations still
govern this appeal.  *See, e.g.*, *Cheri Lee H. v. Comm'r of Soc. Sec.*, 2020 WL 109007, at *6 n.7
(N.D.N.Y. Jan. 9, 2020).

includes a claimant's "own physician, psychologist, or other acceptable medical source" who has provided "medical treatment or evaluation and who has, or has had an ongoing treatment relationship" with the claimant. *Tammy Lynn B.*, 382 F. Supp. 3d at 193 (citation omitted).

The opinion of a treating source regarding the nature and severity of a claimant's impairments is entitled to *controlling* weight when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." *Tammy Lynn B.*, 382 F. Supp. 3d at 193 (citation omitted).

However, "[a] treating physician's statement that the claimant is disabled cannot itself be determinative." *Tammy Lynn B.*, 382 F. Supp. 3d at 193 (citation omitted).  And when a treating source's opinion contradicts other substantial evidence in the record, such as the opinions of other medical experts, an ALJ may afford it less than controlling weight.  *Id*.

A treating physician's opinion may also be properly discounted, or even entirely rejected, when: (1) it is internally inconsistent; (2) the source lacks underlying expertise; (3) the opinion is brief, conclusory, or unsupported by clinical findings; or even where (4) it "appears overly sympathetic such that objective impartiality is doubtful and goal-oriented advocacy reasonably is suspected." *Tammy Lynn B.*, 382 F. Supp. 3d at 193 (citation omitted).

Where an ALJ decides to afford a treating source's opinion less than controlling weight, he must still consider various factors in determining how much weight, if any, to give the opinion, including: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) what evidence supports the treating physician's report; (4) how consistent the treating physician's opinion is with the record as a whole; (5) the area of specialization of the physician in contrast to the condition being treated; and (6) any other factors which may be significant in claimant's particular case.  *Tammy Lynn B.*, 382 F. Supp. 3d at 193–94 (citation omitted).

Beyond this so-called "treating physician rule," the same six factors set forth above apply with equal force to the evaluation of the remaining categories of medical evidence recognized by the Regulations: the "acceptable" and "other" sources mentioned earlier.  *Erik Allen M. v. Berryhill*, 2019 WL 3565944, at *7 (N.D.N.Y. May 22, 2019).  The former, those deemed "acceptable" sources, include "licensed physicians (medical or osteopathic doctors, psychologists, optometrists, podiatrists, and speech-language pathologists."  *Id.* (citation omitted).  The latter category, deemed "other" in Administration parlance, are "ancillary providers such as nurse practitioners, physician assistants, licensed clinical social workers, and therapists."  *Id.*

Only evidence from a "treating" or "acceptable" source can be relied upon to establish the existence of a medically determinable impairment. *Erik Allen M.*, 2019 WL 3565944, at *7 (citation omitted).  However, evidence from all three sources "can be considered when determining severity of impairments and how they affect individuals' ability to function." *Id.*

Finally, while the six-factor analysis set forth above applies in all cases except where "controlling" weight is given to a treating physician's opinion, an ALJ need not mechanically recite these factors as long as the record reflects a proper application of the substance of the rule.  *See, e.g.*, *Petrie v. Astrue*, 412 F. App'x 401, 407 (2d Cir. 2011) (summary order) (noting that an ALJ need not expressly recite each factor so long as it is "clear from the record as a whole that the ALJ properly considered" them).

Upon review, plaintiff's argument about Dr. Lorensen's opinion must be rejected.  The record shows that the ALJ considered Dr. Lorensen's opinion at length as part of his narrative discussion of the medical evidence. R. at 752. Although he gave this opinion "substantial weight," the ALJ declined to adopt Dr. Lorensen's statement about "restrictions on turning the head," which even Dr. Lorensen described "as mild."  *Id.*; *see also* R. at 434–438.

In deciding to discount this particular restriction, the ALJ noted that plaintiff had regularly reported that her neck pain improved with medication, and that various physical examinations in the record failed to substantiate

- 16 -

any evidence of *ongoing* or even *consistent* neck pain that would limit her range of motion.  *See* R. at 752.  Ultimately, the ALJ concluded "there has been no continuous 12-month period during which the claimant has had any particular limitations in the range of motion of her head and neck, beyond those that are [already] accommodated by a restriction to light work."  *Id.*

A review of the record demonstrates that this was a reasonable conclusion for the ALJ to reach, and that he reached it by relying on substantial evidence in the entire record.  Contrary to plaintiff's assertion, the ALJ was not obligated to adopt all of Dr. Lorensen's restrictions or to discuss every shred of conflicting evidence before partially discounting some of them.

After all, even plaintiff acknowledges that "[t]he record does not show constantly present neck issues."  Pl.'s Mem. at 11.  While plaintiff argues that this does not necessarily mean that her "neck limitations are not relevant," nor does it necessarily mean that they required the assessment of additional limitations in her RFC.  *See, e.g.*, *Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 122 (2d Cir. 2012) (holding that a reviewing court "defer[s] to the Commissioner's resolution of conflicting evidence").  In sum, "[p]laintiff's disagreement with the ultimate factual determinations that the ALJ drew from this record evidence is not a basis for remand."  *Tammy Lynn B.*, 382 F. Supp. 3d at 195.  Accordingly, this argument will also be rejected.

## IV.  **CONCLUSION**

The ALJ applied the correct legal standards and supported his written

decision with substantial evidence in the record.

Therefore, it is

ORDERED that

1.  The Commissioner's motion for a judgment on the pleadings is

GRANTED;

2.  Plaintiff's motion for a judgment on the pleadings is DENIED;

3.  The Commissioner's decision is AFFIRMED; and

4.  Plaintiff's complaint is DISMISSED.

IT IS SO ORDERED.


Dated:  May 19, 2022
        Utica, New York.

David N. Hurd
U.S. District Judge